IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHARON R. MITCHELL, ET AL.,** \| | |
| **Plaintiffs** \| | |
| \| | **CIVIL ACTION** |
| v. \| | |
| \| | **NO. 99-6306** |
| **CITY OF PHILADELPHIA, ET AL.,** \| | |
| **Defendants.** \| | |

**Tucker, J.**                                                                                                            **July \_\_\_, 2006**

### MEMORANDUM AND ORDER

Presently before this Court is Defendants' Memorandum in Support of its oral Motion made at trial on April 17, 2006 to enter judgment as a matter of law against Plaintiffs in accordance with FED. R. CIV. P. 52(c) for Judgment on Partial Findings (Doc. 88). For the reasons set forth below, upon consideration of Defendants' oral Motion and Memorandum in Support and Plaintiffs' Response in Opposition (Doc. 90), this Court will grant Defendants' Rule 52(c) Motion.

I.      BACKGROUND

Plaintiff, Sharon Mitchell, and Plaintiff class members (collectively, the "nonmembers") are or were at some time, employees of the City of Philadelphia ("City"). The nonmembers are represented, for purposes of collective bargaining, by District Council 33, American Federation of State, County, and Municipal Employees, and AFL-CIO (hereinafter "District Council 33"). In 1989, the City and District Council 33 agreed to deduct fair share fees from members of the bargaining unit who decided not to join the union. The current and preceding City/District Council 33 collective bargaining agreements have provided for mandatory deductions from the

wages of non-union employees. All nonmembers employed by the City in the District Council 33 bargaining unit pay a uniform agency fee, regardless of the local which receives a portion of their fees. The agreement also indemnifies the City for any losses it may suffer from the improper deduction of fair share fees. District Council 33 has relied on a single individual, Vernon Person ("Mr. Person"), to compute and prepare the annual notices regarding the fair share agreements payable by the nonmembers in the City's bargaining unit.

On an annual basis between 1990 and December 1997, notices were distributed to the nonmembers. In September 1998, Mr. Person was unable to fulfill his normal duties in preparing the annual notice. However, in September 2000, Mr. Person resumed working. At that juncture, the nonmembers had not been provided with annual notices for the intervening two years; however, fees were still deducted from the nonmembers' wages during that time. The notice provided to the nonmembers on or after September 20, 2000 did not contain separate audits for each of the local units affiliated with District Council 33. District Council 33 is affiliated with fourteen (14) constituent locals, ten (10) of which represent different segments of City employees. The agency fees collected from the nonmembers by the City are forwarded to District Council 33, which sends a portion of the collected union dues and agency fees to each local. The September 2000 notice represented an aggregate of the expenses for all the locals and delineated chargeable and non-chargeable costs.

On January 5, 2001, District Council 33 forwarded a new notice, dated December 29, 2000, to the nonmembers. The notice did not contain separate audits for each of the local unions; instead, it was an audit of consolidated local expenses. Plaintiffs contend that during the twenty months from January 1, 1999, until September 20, 2000, Defendants failed to provide advance

notice to the nonmembers for the collection of agency fees in violation of the constitutional requirements defined in *Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292 (1986).[1]

In the Court's Memorandum and Order (Doc. 62, filed on October 13, 2004), the Court reviewed Plaintiffs' Renewed Motion for Summary Judgment (Doc. 52) and Defendants' Cross-Motion for Summary Judgment (Doc. 54).  In their Renewed Motion, Plaintiffs contended that Defendants, District Council 33 and the City, and its various affiliates, have been impermissibly collecting agency fees from the wages of the nonmembers.  In their Cross-Motion, Defendants argued that Plaintiffs suffered no real harm from the delay in sending notices and thus, were not entitled to relief.  Furthermore, Defendants asserted that they were entitled to summary judgment on the issues of 1) the validity of the indemnification clause and 2) notice requirements.  The Court granted in part and denied in part Plaintiffs' Renewed Motion for Summary Judgment. The Court found that District Council 33 failed to comply with the constitutional requirements of *Hudson* when it failed to provide *advance* notice to the nonmembers before deducting agency fees from the nonmembers' wages.  *Hudson*, 475 U.S. 292; *see also Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977).  Although the late notices were substantively adequate, they did not cure the constitutional violation.

The Court next addressed the Plaintiffs' contention that the indemnification clause in the collective bargaining agreement between District Council 33 and the City is void as against public policy.  Specifically, Plaintiffs claimed that such an indemnification clause encouraged the

---

[1] The Supreme Court has ruled that unions must adopt constitutional safeguards in order to ensure that non-union members are only charged with fair-share fees related to collective bargaining.  The procedural safeguards require: (I) advance notice of the basis for the fee;  (ii) a reasonably prompt opportunity to challenge the amount of the fee before an impartial decision-maker, and (iii) an escrow of any amount of the fee "reasonably in dispute." *Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292, 310 (1986).

City to ignore its constitutional obligations. The Court found that the indemnification clause was not void as against public policy. Consequently, the Court denied summary judgment on this issue and stayed the issue of damages until oral arguments were held on October 28, 2004. In the Court's Order (Doc. 66, filed March 18, 2005), the Court granted Plaintiffs $3774.00 in nominal damages, denied Plaintiffs request for full restitution, and withheld Plaintiffs' request for the refund of the non-chargeable portion of the fair share fee until the completion of discovery, which was completed on July 29, 2005.[2] An unsuccessful settlement conference was held before Magistrate Judge Linda K. Caracappa on April 10, 2006. A bench trial for this case began on Monday, April 17, 2006 and recessed at the close of Plaintiffs' evidence.

II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 54(c) provides that judgment on partial findings is appropriate:

> If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgement as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.

FED. R. CIV. P. 52(c).

Rule 52(a) provides in pertinent part:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings

---

[2] In its Order dated April 27, 2005 (Doc. 68, filed Apr. 27, 2005), the Court extended the deadline to complete discovery from May 16, 2005 to July 29, 2005.

>of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses . . . . It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56 or any other motion except as provided in subdivision (c) of this rule.

FED. R. CIV. P. 52(a).

III.  DISCUSSION

In their Memorandum in Support of their Rule 52(c) Motion, District Council 33 argues that the allocation of the burden of proof is on the Plaintiffs to show, with specificity, that they are entitled to damages. Secondly, Defendants argue that the organizing expense charge of $50,538.00, which is a line item contained on page ten of the first of the two September 20, 2000 notices, may be deemed to be a chargeable expense because organizing expenses can be deemed to be a chargeable activity. (Defs.' Mem. at 3.)

In regard to their first assertion, Defendants argue that the evidence presented by Plaintiffs fails to establish with specificity that Plaintiffs suffered actual damages and that they are entitled to any damages other than the nominal damages previously awarded. (Defs.' Mem. at 3, 5-6.) According to Defendants, Plaintiffs did not submit any evidence to prove that the Union's refund of overpaid fair share fees in 2000 was wrong and failed to establish that they suffered any additional injury caused by the tardy furnishing of the notices.[3] *Id*.

Defendants argue that in preparation for his testimony, Plaintiff's expert witness, Irving

---

[3] The only evidence presented at trial by the Plaintiffs consisted of the expert testimony of Irving B. Ross, C.P.A. ("Ross").

B. Ross, C.P.A. ("Ross"), reviewed only the fair-share notices themselves, Vernon Person's deposition, and portions of Mr. Person's working papers the morning of the trial. *Id*. at 1. According to Defendants, the gravamen of Ross's testimony was that, absent any time sheets or activity reports, it was impossible to gauge the propriety of the Union's fair share fee. *Id*. at 1-2. Defendants further argue that Ross lacked knowledge regarding what other objective pieces of evidence Mr. Person may have reviewed while preparing his calculations, the extent to which Mr. Person interviewed any of the individuals involved, or the extent to which Mr. Person had satisfied himself, within professional standards, as to the validity of the numbers reported. *Id*. at 2. Although Ross expressed his concerns regarding an apparent change in a compilation of hours, Defendants argue that Ross was unable to pinpoint the significance of the apparent alterations and did concede that other objective evidence – such as date books, calendars, and receipts – could, in a theoretical sense, be relied upon in making a fair share calculation. *Id*. Defendants point out that Ross relied on such materials in his own practice of making similar types of assessments and that Ross's opinion regarding the lack of reliability of the calculations with respect to the time spent by Local and Council employees was admittedly based on a limited review of a limited subset of relevant or available records. *Id*. In addition, Defendants argue that most importantly, Ross could not and did not testify that any of the calculations made by Mr. Person were in fact wrong or that the audits certifying the validity of the expenses reported by the Unions were inaccurate. *Id*.

In regard to Defendants' second issue of whether organizing expenditures can properly be charged to the nonmembers, Defendants contend that the chargeability of expenses depends on

whether the expense was necessary to performing the duties of the exclusive representative.[4] *Id.* at 3. Defendants argue that organizing is germane to collective bargaining because it is necessary to performing the duties of the exclusive representation, which may include initial recruitment and incorporation of new members into a nascent bargaining unit, contract administration or grievance adjustment. *Id.* at 3-4. Thus, Defendants argue that organizing expenditures are properly chargeable to the nonmembers. *Id.*

In their Response in Opposition, Plaintiffs counter that the burden of proof in this case is not upon the nonmembers to prove actual damages but rather upon District Council 33 to prove that their fair share calculations are accurate and demonstrate that any portion of its expenditures are properly chargeable to the nonmembers. (Pls.' Res. in Opposition at 7, 10.) According to Plaintiffs, Defendants' claims as to chargeability are unreliable, and as such, Plaintiffs assert that even if they maintained the burden of proof in this case, they proved actual damages when they demonstrated that $1,942,232.32 was seized from them during the twenty months from January 1, 1999 until September 20, 2000. *Id.* at 9.[5] Relying on *Hohe v. Casey*, 965 F.2d 399, 415 (3d Cir. 1992), Plaintiffs concluded that they established actual damages when they demonstrated that $1,942,232.32 was seized from them during the twenty months from January 1,1999 until September 20, 2000.

Plaintiffs further assert that the organizing expenditures of $50,538.00, which Defendants

---

[4] "Necessary duties" is defined as those that are "germane to collective bargaining, contract administration or grievance adjustment." *United Food & Commercial Workers Union Local 1036 v. NLRB*, 307 F.3d 760 (9th Cir. 2002) (citations omitted).

[5] Plaintiffs arrive at this conclusion by relying on a Third Circuit Court of Appeals decision holding that "nonmembers suffer actual damages when an exclusive representative collects a fee that is more than their proportionate share of the total chargeable costs of collective bargaining." *Hohe v. Casey*, 965 F.2d 399, 415 (3d Cir. 1992).

argue is appropriately chargeable, is in fact non-chargeable. *Id*. at 7-10. Plaintiffs assert that the amount which can be exacted from a nonmember's fair share fee is limited because the Commonwealth statutory authorization for public-sector forced unionism limits the amount of the fee to "the regular membership dues required of members of the exclusive representative, less the cost of the previous fiscal year of its activities or undertakings which were not reasonably employed to implement or effectuate the duties of the employee organization as exclusive representative." *See* 43 PA. STAT. ANN. 1102.1 *et seq*. (authorizing public-sector forced-unionism agreements); 43 PA. STAT. ANN. 1102.2 (defining fair share fee). Accordingly, Plaintiffs argue that organizing expenditures are entirely non-chargeable.

In regard to the initial issue concerning which party has the burden of proof in this case, it is important to note that the overall issue before this Court pertains to Plaintiffs' request for the refund of the non-chargeable portion of the fair share fee as it as it relates to the issue of notice. As the Court pointed out during the trial, this case initiated with Plaintiffs asserting a claim against Defendants for lack of advance notice before deducting agency fees from the nonmembers' wages in violation of *Hudson*. Thus, this case must proceed as a notice case, meaning that the issue regarding objections to the fee sharing portion must be reviewed in relation to the issue of actual damages resulting from Defendants' alleged failure to provide proper notice. (*See* Tr. at 8-9.)

Accordingly, the Court finds that the case law relied upon by Plaintiffs regarding objections to the fee sharing portion are dissimilar to the present case, and that it is the Plaintiffs' burden to prove the injury which would necessitate such a remedy for the violation in this

8

proceeding.[6] As such, the Court finds that in order to establish a prima facie case for refund of the non-chargeable portion of the fair share fee, it is Plaintiffs burden to show that they suffered actual damages. In the present proceeding, recessed after the close of Plaintiffs' evidence, Plaintiffs failed to present sufficient evidence establishing that they suffered actual damages with specificity.[7]

Accordingly, the Court does not reach the merits of the second issue regarding whether Defendants' deductions are properly charged to the nonmember Plaintiffs.

IV.  CONCLUSION

Based on the foregoing reasons, the Court will grant Defendants' Rule 52(c) Motion. An appropriate Order follows.

---

[6] Plaintiffs assert that in *Hohe* the Third Circuit held that "nonmembers suffer actual damages when an exclusive representative collects a fee that is more than their proportionate share of the total chargeable costs of collective bargaining." *Hohe*, 965 F.2d at 415. The Court went on to note that "the issue of whether the notice contains a verification is irrelevant to whether the exclusive representative properly calculated the proportionate share of the total chargeable expenses" and, therefore, "the failure of the notice to contain a verification cannot give rise to actual damages." *Id*. However, *Hohe* is distinguishable from the present case because in *Hohe* Plaintiffs attacked "the nature, extent, accuracy and thoroughness of the accountant's audit and opinion." In the present case, the issue of the nonchargeable portion of the fair share fee is an issue as it relates to notice only.

[7] Plaintiffs' presented testimony from a single expert witness who testified regarding the accuracy of Defendants' fair share calculations and validity of whether Defendants' organizing expenditures are properly chargeable to the nonmembers.