**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHARON R. MITCHELL, ET AL.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 99-6306** |
| **CITY OF PHILADELPHIA, ET AL.,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OPINION**

Tucker, J.                                                                                   April ____, 2010

Presently before the Court are Plaintiffs' Petition for Attorneys' Fees, Costs, and

Expenses Pursuant to 42 U.S.C. § 1988 (Doc. 173); Defendant District Council 33's Response

and Affidavit in opposition thereto (Docs. 177-178); and Plaintiffs' Reply (Doc. 180). For the

reasons set forth below, this Court will grant in part and deny in part Plaintiffs' Petition.

**BACKGROUND**

This action arises from Defendants' alleged enforcement of compulsory unionism through

numerous collective bargaining agreements that require a "fair share fee" from Plaintiffs and

other non-union employees of the City of Philadelphia. Plaintiffs Sharon R. Mitchell, *et al.*, on

behalf of themselves and a class of 3,774 non-union employees of the City of Philadelphia

("Plaintiffs"), filed this civil rights action under 42 U.S.C. § 1983, seeking declaratory and

injunctive relief, equitable restitution, and attorneys' fees and costs from Defendants, City of

Philadelphia and certain municipal officials ("the City"), and District Council 33, AFSCME

International, and AFL-CIO ("the Union") (collectively, "Defendants").[1]

In 1989, the City and District Council 33 agreed to deduct fair share fees from the members of the bargaining unit who decided not to join the union. The collective bargaining agreements between the City and the Union provided for mandatory uniform deductions from the wages of non-union employees. Under those agreements, all nonmembers employed by the City in the District Council 33 bargaining unit pay a uniform agency fee, regardless of the local affiliate that receives a portion of the fees collected. Also, the City is indemnified for any losses it may suffer from the improper deduction of fair share fees. The Union issued notices to Plaintiffs on an annual basis, from 1990 through December 1997, regarding the fair share fees payable by Plaintiffs. From January 1999 through September 20, 2000, Plaintiffs were not provided with annual notices; however, fees were still deducted from their wages.

In their Complaint, Plaintiffs challenged Defendants' practice of collecting fair share fees, alleging: (1) Defendants failed to comply with the constitutional requirements for the collection of agency fees under Chicago Teachers Local No. 1 v. Hudson, 475 U.S. 292, 306-10 (1986),[2] and (2) Defendants collected fair share fees in excess of the amounts permitted by the First and Fourteenth Amendments to the United States Constitution because portions of the total fee were used for union activities which cannot be constitutionally financed from compulsory fees of

---

[1] District Council 33 is chartered by the American Federation of State, County, and Municipal Employees International ("AFSCME International"), affiliated with the Pennsylvania AFL-CIO and the Philadelphia Council of the AFL-CIO, and has fourteen (14) constituent locals, ten (10) of which represent different segments of City employees.

[2] In Hudson, the Court held that "the constitutional requirements for the...collection of agency fees include an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." Chi. Teachers Local No. 1 v. Hudson, 475 U.S. 292, 310 (1986).

nonmembers.  (Compl. 2-3.)

On September 20, 2000 and January 5, 2001, the Union distributed notices to Plaintiffs, representing an aggregate of the expenses for all the locals, and delineated chargeable and nonchargeable costs.  Thereafter, two issues were before the Court: (1) whether Defendants were liable for failing to comply with <u>Hudson</u> for deductions occurring from January 1999 through September 20, 2000; and (2) whether Defendants' post-suit notices were constitutionally adequate.  Cross-motions for summary judgment were filed in June and July 2001.  (Docs. 37 & 44.)  The Court heard argument on the motions on September 5, 2001, and the Court issued an order on January 18, 2002 denying the motions upon a finding that there were disputed facts. (Doc. 48.)

After a status conference, Plaintiffs filed a second amended Complaint.  (Doc. 49.) Thereafter, Plaintiffs filed a renewed summary judgment motion (Doc. 52), and Defendants filed a cross-motion (Doc. 54).  Upon consideration of those motions, the Court issued two orders on September 30, 2004 (Docs. 59 & 62), granting in part Plaintiffs' motion and holding that "DC 33 failed to comply with the constitutional requirements of <u>Hudson</u> when it failed to provide *advance* notice to Plaintiffs before deducting agency fees from Plaintiffs' wages" (Docs. 59 & 62).  However, the Court found the Union's post-suit notices to be constitutionally adequate. (Doc. 62.)  The Court also found that the indemnification clauses were not void as against public policy.  (Doc. 62.)  Turning to the appropriate relief for the constitutional violations, the Court held that damages were "not readily ascertainable from the pleadings and the record," and therefore "stay[ed] the issue of damages until hearing on the appropriate remedy."  (Doc. 59.)

After briefing (Doc. 63 & 64) and hearing, the Court ruled that Plaintiffs are entitled to an award of nominal damages (in the amount of $3,774), but declined to award full restitution (Doc. 66). Instead, the Court permitted discovery and scheduled trial on a "refund of the non-chargeable portion of the fair share fee." (Doc. 66.)

Trial commenced on April 17, 2006, and the Court considered the portion of agency fees collected, absent any notice or procedures, that could legitimately be retained by the Union and properly classified as "chargeable" expenditures for its costs of collective bargaining, contract administration, and grievance adjustment. At the close of Plaintiffs' case, the Union moved for a directed verdict, and that motion was granted. (Doc. 91.)

Plaintiffs sought reconsideration, a new trial, and/or relief from judgment. (Doc. 92.) The Court granted their motion in part (Doc. 98), determining that an issue remained as to whether Defendants' deductions were properly charged to Plaintiffs. With respect to the advance notice claim, the Court concluded that Plaintiffs failed to establish with specificity that they suffered actual damages, or that they are entitled to damages other than the nominal damages awarded by the Court as a result of Defendants' failure to comply with the advance notice requirements under Hudson. (Doc. 98.) Therefore, trial was set to resume regarding the issue of chargeability only.

After trial, on September 18, 2008, the Court entered a Memorandum and Order (Doc. 156), stating as follows:

1.      Expenses disallowed as chargeable
        a.      District Council 33 organizing expenses FY 1996;
        b.      District Council 33 newsletter printing and mailing expenses in excess of expenses incurred to print copies available to nonmembers in union offices in FY 1996 and FY 1997;

> c. Expenses taken for seminar at George Meany Center for union organizing in FY 1996.
>
> 2. All other expenses, including personnel expenses taken as chargeable are permitted.

Plaintiffs appealed, but the United States Court of Appeals for the Third Circuit affirmed. (Doc. 170.) Presently, Plaintiffs request an award of reasonable attorneys' fees, costs, and expenses.

## DISCUSSION

The fee-shifting statute upon which Plaintiffs' petition is premised provides that in any action brought to enforce certain statutory provisions, including Section 1983, courts may "allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...." 42 U.S.C. § 1988(b). At issue, here, is whether Plaintiffs are entitled to attorneys' fees, costs, and expenses in the range of $418,131.41 to $464,136.41, pursuant to 42 U.S.C. § 1988. That inquiry requires the Court to consider the following two issues: (1) whether Plaintiffs are prevailing parties; and (2) whether the fees requested by Plaintiffs are reasonable.

**I. Plaintiffs are Prevailing Parties Because They Succeeded on a Significant Issue in the Litigation and Their Success Materially Altered the Relationship Between the Parties.**

Plaintiffs are prevailing parties if they succeed on any significant issue in litigation which achieves some of the benefit sought in bringing suit. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Holmes v. Millcreek Twp. Sch. Dist., 205 F.3d 583, 593 (3d Cir. 2000). Since the prevailing party inquiry requires only that the suit obtain *some* of the benefit sought, the plaintiff's failure to obtain the specific relief prayed for in the complaint does not necessarily preclude prevailing party status. See Truesdell v. Phila. Hous. Auth., 290 F.3d 159, 165 (3d Cir. 2002); Ashley v. Atl. Richfield Co., 794 F.2d 128, 135-138 (3d Cir. 1986) (holding that

agreement to seal employment record was sufficient to make plaintiff prevailing party although plaintiff sought expungement of record).  A litigant's prevailing party status "does not turn on the magnitude of the relief obtained."  <u>Farrar v. Hobby</u>, 506 U.S. 103, 114 (1992).  Rather, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  <u>Id.</u> at 111-12.  Even a nominal damage recovery is sufficient to make the plaintiff a prevailing party because it alters the relationship between the parties by forcing the defendant to pay an amount of money that otherwise would not be paid.  <u>Id.</u>

Plaintiffs maintain that they are prevailing parties because they won partial summary judgment entering declaratory relief and nominal damages.  (Pls.' Pet. 6, citing Docs. 59 & 62.)  They also argue that they won some of the restitutionary damages sought at trial.  (Pls.' Pet. 6, citing Doc. 156.)  During oral argument, held February 2, 2010, the Union conceded that Plaintiffs qualify for prevailing party status.  Such a position is reasonable given that Plaintiffs succeeded in their claim that the Union violated the constitutional precepts of <u>Hudson</u> when it failed to provide advance notice to them before deducting agency fees from their wages.  Plaintiffs' success on the notice issue materially altered the legal relationship between the parties by forcing Defendants to pay an amount of money to Plaintiffs that they otherwise would not have paid.  Therefore, the Court agrees that Plaintiffs are prevailing parties.

However, establishing a litigant's prevailing party status is only the first step in the attorney fee inquiry.  Once that threshold has been crossed, the litigant must demonstrate that it should recover fees under the relevant fee-shifting statute and prove the amount of the fee.  <u>See</u> <u>Hensley</u>, 461 U.S. at 433; <u>see generally</u> 10 James Wm. Moore et al., <u>Moore's Federal Practice</u> ¶

54.171 (3d ed. 2009).  Therefore, this Court will proceed to determine Plaintiffs' entitlement to attorneys' fees and the reasonableness of the fees requested.

## II.     Despite the Nominal Relief Obtained, Plaintiffs are Entitled to Some Attorneys' Fees Based on the Significance of the Legal Issue Prevailed On and the Public Purpose Served.

Although a nominal damages recovery does not necessarily disqualify a plaintiff from prevailing party status, such a plaintiff usually is denied fees.  See Farrar, 506 U.S. at 115.  In Farrar, the Court held that even a plaintiff who formally prevails under Section 1988 may not be entitled to attorneys' fees.  Id.  Since degree of success is the most critical factor in setting a fee award, "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." Id. (internal citation omitted).

For guidance in determining whether to award fees to a civil rights plaintiff who recovers nominal damages, courts have turned to the three-part analysis set forth by Justice O'Connor in her special concurrence in Farrar.  See, e.g., Hawa Abdi Jama v. Esmor Corr. Servs., 577 F.3d 169, 176 (3d Cir. 2009); Petrunich v. Sun Bldg. Sys., 625 F. Supp. 2d 199, 206 (M.D. Pa. 2008). In Farrar, the plaintiff filed a civil rights action seeking $17 million in damages and prevailed on certain claims, but was awarded only nominal damages of one dollar.  506 U.S. at 108.  Although Justice O'Connor agreed that the plaintiff was not entitled to attorneys' fees, she acknowledged that "[t]he difference between the amount recovered and the damages sought is not the only consideration," when determining the degree of success achieved.  Id. at 121 (O'Connor, J., concurring).  She recognized that "an award of nominal damages can represent a victory in the sense of vindicating rights even though no actual damages are proved."  Id.  Accordingly, Justice

O'Connor urged consideration of the following three factors in evaluating success: (1) the extent of relief recovered in relation to the damages sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose served by the litigation. Id. at 121-22.

Here, the Union focuses on Plaintiffs' limited degree of monetary success to the exclusion of the other "relevant indicia of success" cited by Justice O'Connor. From the Union's standpoint, "the entire thrust" of Plaintiffs' suit was "to obtain restitution of all fees paid during the two years in question, not some meager portion" (Def.'s Resp. 15); yet, despite that goal, Plaintiffs obtained less than 1% of the relief sought (Def.'s Resp. 1). Specifically, the Union argues that Plaintiffs did not prevail on the following major issues: (1) whether the consolidated local expenses portion of the notices was "substantively adequate;" (2) whether total restitution was appropriate; and (3) whether the Union's agreement to indemnify the City was constitutional. (Def.'s Resp. 3, 13.) In addition, the Union emphasizes that in the first phase of the litigation, the Court awarded only $1 in nominal damages to each fee-payer (totaling $3,774). (Def.'s Resp. 14.) Moreover, after a subsequent damages hearing, the Union's request for a directed verdict was granted, and the Court granted reconsideration and a new trial to address Plaintiffs' chargeability claim, "which resulted in a finding of liability with regard to three of the thousands of expenses calculated by the Union in preparing its chargeability calculations." (Def.'s Resp. 14.) Although Plaintiffs sought to recover $1,942,232.22 (the total fees collected from Plaintiffs between January 1, 1999 and September 20, 2000), the Court held that they were entitled to recover only their actual damages (calculated by the Union to be $13,836.27). (Def.'s Resp. 14.) Thus, the Union argues that Plaintiffs' monetary recovery amounts to only 0.9067% of the total amount sought in the litigation. (Def.'s Resp. 15.)

In response, Plaintiffs declare that the value of this case is not measured in dollars alone. (Pls.' Reply 3.)  They underscore that this is not a case where Plaintiffs sought a large payday and received only a pittance (Pls.' Reply 7); rather, Plaintiffs obtained a declaration that the Union's collections for nearly two years were illegal under Hudson (Docs. 59 & 62), and received a refund of fees overcharged by the Union for the period of noncompliance (Doc. 39).  According to Plaintiffs, the permanent injunctive relief sought apparently was denied *not* because Plaintiffs failed to demonstrate a violation of their rights, but because, as a result of this suit, the Union altered its notices and procedures to comply with controlling legal standards.  (Pls.' Reply 8.) Plaintiffs further maintain that a reduction of the fee award based on partial success ignores the Hensley Court's admonition that when plaintiffs prevail on the central issue in the suit, their counsel should recover a fully compensatory fee.  (Pls.' Reply 4.)  Plaintiffs claim that they prevailed on the following central issues in this case: (1) whether Defendants collected fees in violation of Hudson's procedural requirements; and (2) whether the fees collected were appropriately limited to constitutional purposes.[3]  (Pls.' Reply 5.)

This Court acknowledges that Plaintiffs obtained nominal relief in relation to the damages sought, yet other relevant indicia of success suggest that the victory is not so *de minimis* as to render unjust the award of attorneys' fees to Plaintiffs.  In Farrar, the Court held that the litigation "accomplished little beyond giving petitioners 'the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated' in some unspecified way."  506 U.S.

---

[3] Plaintiffs cite the following orders:  (1) Doc. 60 (denying Defendants' claim that no constitutional violation has been demonstrated with regard to Hudson notice requirements); (2) Doc. 61 (granting Plaintiffs' claim that Defendants failed to comply with the constitutional requirements for the collection of agency fees); (3) Doc. 66 (granting in part Plaintiffs' request for nominal damages; allowing discovery regarding compensatory damages); and (4) Doc. 156 (finding that some expenses treated as chargeable are constitutionally nonchargeable to Plaintiffs).

at 114. By contrast, in the instant matter, Plaintiffs garnered more than the moral achievement of a declaration from the Court that the Union's collections for nearly two years were illegal under Hudson. Notably, Plaintiffs achieved their goal of forcing the Union to alter its notices and procedures in compliance with Hudson. As the Seventh Circuit noted in an analogous case, "[t]he mere fact that this goal was achieved through the Union's pre-judgment decision to amend its practices is unimportant," because "the Union would not have acted absent the lawsuit." See Johnson v. Lafayette Fire Fighters Ass'n Local 472, 51 F.3d 726, 731 (7th Cir. 1995). Further, it is irrelevant that Plaintiffs did not obtain permanent injunctive relief because such relief was unnecessary in light of the Union's remedial actions.

In addition, the legal issues presented are of great importance, as "procedural safeguards have a special bite in the First Amendment context." See id. (citing Hudson, 475 U.S. at 303 n.12 ). Moreover, Plaintiffs' success serves a public purpose because it "ensures proper procedure for each future non-member prior to payment of their fair share fee." See id. Thus, the determination that the City and the Union violated Plaintiffs' constitutional rights represents a significant legal conclusion serving an important public purpose. Therefore, despite the nominal nature of their damages award, this Court finds that Plaintiffs have established a basis for recovering attorneys' fees.

Having established that the Plaintiffs are entitled to attorneys' fees, the Court must next determine the amount of fees to which Plaintiffs are reasonably entitled.

III.     **The Fees Requested by Plaintiffs Are Not Reasonable Since They Do Not Adequately Reflect Plaintiffs' Partial Success.**

A reduction in the fee request is required "if the relief, however significant, is limited in

comparison to the scope of the litigation as a whole." Hensley, 461 U.S. at 440.  Plaintiffs

request $418,131.41 to $464,136.41 in attorneys' fees, costs, and expenses.[4]  For the reasons

outlined below, this Court finds that Plaintiffs' requested fees, costs, and expenses are not

reasonable.

### A.        The Lodestar Method of Calculation is Appropriate.

Under federal fee-shifting statutes that authorize fee awards to the "prevailing party,"

courts compute fees based on the lodestar method of calculation.  The lodestar is "strongly

presumed to yield a reasonable fee."  Washington v. Phila. County Ct. Com. Pl., 89 F.3d 1031,

1035 (3d Cir. 1996) (citing City of Burlington v. Dague, 505 U.S. 557, 562 (1992)).  As the

Supreme Court explained:

> [T]he most useful starting point for determining the amount of a
> reasonable fee is the number of hours reasonably expended on the
> litigation multiplied by a reasonable hourly rate.  This calculation
> provides an objective basis on which to make an initial estimate of
> the value of a lawyer's services.  The party seeking an award of
> fees should submit evidence supporting the hours worked and rates
> claimed.  Where the documentation of hours is inadequate, the
> district court may reduce the award accordingly.

Hensley, 461 U.S. at 433.  The court may dispense with the entire lodestar calculation if the

prevailing party obtains only nominal damages or a mere technical victory.  Farrar, 506 U.S. at

---

[4] Plaintiffs argue that the award sought is consistent with the awards sought in other cases, and urge the
Court to follow the reasoning of the United States District Court for the Middle District of Pennsylvania in Robinson
v. Pa. State Corr. Officers Ass'n, 299 F. Supp. 2d 425, 426 (M.D. Pa. 2004).  Plaintiffs assert that Robinson was a
class action which raised similar Hudson claims, the litigation lasted less than four years, and the plaintiffs' counsel
sought and obtained an award of nearly $350,000 in fees and costs for the services of two attorneys at rates
calculated based on Harrisburg rates.  (Pls.' Reply 23.)  Plaintiffs' reliance on Robinson is misplaced.  In Robinson,
the plaintiffs prevailed on two motions for partial summary judgment, and the parties reached a settlement agreement
which provided the plaintiffs with a substantial part of the relief sought, including refunds, with interest, and nominal
damages.  Robinson v. Pa. State Corr. Officers Ass'n, No. 1:02-CV-1124, 2005 U.S. Dist. LEXIS 42364, at *10
(M.D. Pa. Dec. 14, 2005).  Therefore, this Court will not rely on Robinson as a basis for the award of fees to
Plaintiffs in this matter.

115; Moore et al., supra at ¶ 54.190. In those circumstances, the court may either deny fees or make an award of nominal fees. 506 U.S. at 115. Here, since Plaintiffs have pointed to some way in which the litigation has succeeded other than the recovery of nominal damages (as addressed above), this Court will not dispense with the lodestar method altogether.

Despite the strong presumption of reasonableness accorded to the lodestar, a downward adjustment of the lodestar may be appropriate based on the results obtained. When a plaintiff has achieved substantial success in the litigation but has prevailed on fewer than all of his claims, the court must determine whether the failed claim was intertwined with the successful claim. See Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 789-90 (1989). "No fees should be awarded for time spent pursuing a failed claim if it was 'unrelated' to the Plaintiffs' successful claims in the sense that it was 'based on different facts and legal theories.'" See, e.g., NRDC, Inc. v. Fox, 129 F. Supp. 2d 666, 670 (S.D.N.Y. 2001) (citations omitted).

However, where all claims share a common core of facts, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435. In those cases, the Supreme Court has instructed district courts to "exercise their equitable discretion...to arrive at a reasonable fee award, either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff." 489 U.S. at 798-90; Moore et al., supra at ¶ 54.190 (reduction in lodestar "may be made by eliminating some of the claimed hours or, if that is impracticable or impossible, by making a post-lodestar percentage reduction in the fee."). The former approach is favored. See, e.g., Pub. Interest Research Group v. Windall, 51 F.3d 1179, 1189 (3d Cir. 1995) (remanding because district court

12

failed to make hour-by-hour analysis).

Here, the case was bifurcated into two issues: the notice issue and the chargeability issue. Underscoring the distinction between those claims, the Union asserts that "[t]his is not a case where Plaintiffs can rightly claim that the interrelated nature of their claims precludes the parceling of their fee request and that they are indeed entitled to a full recovery of fees and expenses as a result of their successes." (Def.'s Resp. 16 n. 10.) In addition, the Union contends that "the entire litigation efforts of the first seven years of this case had nothing to do with the relief ultimately obtained at the end of the ninth year; the discovery had almost nothing to do with the claims on which Plaintiffs prevailed; and the major issues, even at the damages trial…had nothing to do with the items disapproved in the final judgment." (Def.'s Resp. 16 n. 10.)

While the two claims related to notice and chargeability are based on a common nucleus of facts, this Court agrees that they are sufficiently distinct such that the services performed in pursuit of the successful claim can be segregated from those performed in pursuit of the unsuccessful claim for the purpose of awarding attorneys' fees. Therefore, this Court will award attorneys' fees for services performed in relation to the notice issue only. Accordingly, no fees will be awarded for efforts expended toward the unsuccessful claims related to chargeability which were pursued at trial starting April 14, 2008. The relevant cut-off point, then, is the Court's Order of March 13, 2007, which determined that trial would resume on the issue of chargeability only. Any hours billed or costs incurred by Plaintiffs' counsel after that date are excluded from the lodestar calculation.

    **B.**    **<u>Hours Reasonably Expended on Case.</u>**

Under the lodestar method of calculation, the party seeking a fee award must establish the number of hours reasonably expended on the litigation. <u>Hensley</u>, 461 U.S. at 433.

1.     **Number of Hours**

The fees requested are based on a total of 51.9 hours billed by assistant counsel, James J. Plunkett, Esq.; and more than 900 hours billed by lead counsel, W. James Young, Esq.[5] Certain discrepancies in Plaintiffs' Petition rendered it difficult for this Court to ascertain the precise number of hours billed by Mr. Young. In Section III of the Petition, Plaintiffs indicate they are seeking fees based on a total of 930.1 hours billed by Mr. Young, while, in Section IV, Plaintiffs indicate that they are seeking fees based on a total of 903.85 hours billed by Mr. Young. Since the Attorneys' Fees Summary Report ("the Summary Report") attached to the Petition indicates that Mr. Young's chargeable hours total 930.1,[6] the Court presumes that the fees requested for Mr. Young's services are based on a total of 930.1 hours.

Plaintiffs provided a breakdown of the hours expended by Mr. Young in Section III. Since those hours reflect work performed on both the notice and chargeability issues, that breakdown must be reviewed in conjunction with the Summary Report (which provides the dates the work was performed) to determine the maximum number of hours that may serve as the basis for a fee award. Plaintiffs have allocated the 930.1 hours expended by Mr. Young as follows:

---

[5] The Union claims that there is also a discrepancy in the amount of hours claimed for the services of Mr. Plunkett. (Def.'s Resp. 20 n.14.) However, the Court finds that the Union is mistaken. The Attorneys' Fees Summary Petition indicates that Mr. Plunkett expended 51.9 chargeable hours (not 51.3). The balance of 0.6 hours appears at the top of the page and, apparently, was inadvertently excluded from the Union's calculation.

[6] The Union claims that Mr. Young's chargeable hours total 932.3 in the Attorneys' Fees Summary Report. (Def.'s Resp. 20-21 n. 15.) However, it appears that the Union inadvertently added 2.2 hours designated as "n/c" (or nonchargeable) in the Attorneys' Fees Summary Report (see entry for 07/12/2001).

| Type of Work Performed | Hours |
|---|---|
| Initial investigation, complaint, amended complaints, and service | 55.4 |
| Correspondence | 2.35 |
| Motion for Class Certification | 3.7 |
| Motion to Dismiss | 18.45 |
| Settlement efforts and conferences | 43.0 |
| Discovery | 162.0 |
| Client communications | 12.8 |
| Union's Motions for Summary Judgment | 44.7 |
| Motion for Summary Judgment | 104.6 |
| Renewed Motion for Summary Judgment | 71.3 |
| Hearing on damages; trial | 380.85 |
| Motion for Reconsideration | 2.2 |
| *Appeal (n/c)* | *328.45* |
| *Miscellaneous (n/c)* | *4.75* |
| Petition for attorneys' fees and costs | 28.75 |
| ***Total Recorded Hours (subtotal)*** | ***1,263.3*** |
| **Total Recorded Hours Minus Exclusions** | **930.1** |

(Pls.' Pet. 8.)  Based on the Summary Report, it appears that after March 14, 2007, the hours billed by Mr. Young were in connection with the trial on the chargeability issue.[7]  Therefore, the Court concludes that the award of fees to Mr. Young will be based on the hours reasonably expended from August 2, 1999 (the date when Mr. Young began work on this litigation) through

---

[7] On March 14, 2007, Mr. Young billed time for reviewing the Court's Order of March 13, 2007.  The next time entry is on April 16, 2007.  On that date, Mr. Young billed time for traveling to, attending, and returning from a status conference the purpose of which was to discuss the status of the case in light of the Court's Order to resume trial on the outstanding issue of chargeability.  Thereafter, Mr. Young billed time for trial-related tasks, including briefing on the burden of proof at trial, summary judgment briefing, discovery, and preparation for and participation in trial.

March 14, 2007 (the date Mr. Young reviewed the decision from the Court ordering that trial would resume on the issue of chargeability). Thus, the maximum number of hours that can serve as a basis for the award of fees to Mr. Young is 545.35 hours.[8]

Further, it appears that Mr. Plunkett did not start billing to this matter until April 16, 2007. Since his work was performed after the Court's March 13, 2007 Order, this Court will award no attorneys' fees for the hours billed by Mr. Plunkett, which relate to the trial on the chargeability issue alone.

## 2.    Whether Hours Were Reasonably Expended

Having determined that Mr. Young's fee award will be based on a maximum of 545.35 billable hours, this Court must now determine whether all of those hours were "reasonably expended." See, e.g., Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001) (calculation of hours reasonably expended requires a court to "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'") (citations omitted); Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 362 (3d Cir. 2001); Pretlow v. Cumberland County Bd. of Soc. Servs., No. 04-2885, 2005 U.S. Dist. LEXIS 35547, at *12-13 (D.N.J. Dec. 20, 2005) ("[T]he Third Circuit mandates that a district court conduct more than a cursory review of the billing records, and must 'go line, by line' through the billing records supporting the fee request.").

The Union challenges the reasonableness of the hours claimed by Plaintiffs on three

---

[8] The Court arrived at this number by adding all the hours in Mr. Young's time entries from August 2, 1999 through March 14, 2007. (Summary Report 2-7.)

fronts: (1) Plaintiffs unnecessarily bypassed settlement and the lodestar should be adjusted to reflect their rejection of substantial settlement offers; (2) the hours claimed for Mr. Young's motion practice are excessive in light of his familiarity with "fair share" litigation; and (3) Plaintiffs' counsel should not be compensated for travel time and costs. In response, Plaintiffs argue that this Court is not permitted to consider evidence of Plaintiffs' rejection of settlement offers to support a downward lodestar adjustment. (Pls.' Reply 14.) Second, Plaintiffs argue that the Union's contention that Plaintiffs' hours are "excessive" is not sufficiently supported by evidence. (Pls.' Reply 17.) Third, Plaintiffs argue that travel time is fully compensable. (Pls.' Reply 21-22.) The Court will address each of these three issues in turn.

### a.    Settlement Negotiations

Contrary to Plaintiffs' assertion, evidence of settlement negotiations is permissible in evaluating the reasonableness of a fee award. See Lohman v. Duryea Borough, 574 F.3d 163, 167 (3d Cir. 2009) ("Rule 408 does not bar a court's consideration of settlement negotiations in its analysis of what constitutes a reasonable fee award in a particular case."). Consideration of a party's rejection of a settlement offer does not contravene Fed. R. Evid. 408, as that rule requires exclusion of evidence of settlement negotiations "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." Fed. R. Evid. 408(a). Here, Plaintiffs' rejection of two settlement offers is being offered to support a downward adjustment of the lodestar. Such evidence is relevant to a determination of the degree of Plaintiffs' success. See UAW Local 259 Soc. Sec. Dep't v. Metro Auto Ctr., 501 F.3d 283, 291 (3d Cir. 2007). Therefore, the Court will consider evidence of the settlement negotiations in determining the fee award.

The Union claims that, on April 10, 2006, it offered to settle this case for $250,000, but Plaintiffs insisted on sums in excess of $1 million (excluding counsel fees). (Def.'s Reply 22.) The Union also claims that settlement negotiations were attempted again, at the end of trial in 2008, and Plaintiffs rejected an offer of at least $150,000. (Def.'s Reply 22.) Although the Union points to settlement negotiations in 2006 and 2008, it appears, based on the Attorneys' Fees Summary Report, that the 43.0 hours that Plaintiffs claim for "settlement efforts and conferences" relate to two settlement conferences that took place in 2000 and 2006. (Pls.' Pet. Ex. A, Att. 1.) Therefore, the Court will consider only whether Plaintiffs' rejection of the 2006 settlement offer (and not the purported 2008 offer) supports a downward adjustment of the lodestar.

Plaintiffs claim that, at the time of the settlement conference in 2006, they "had every expectation that DC 33 would be able, and attempt, to prove virtually nothing at trial." (Pls.' Reply 16.) Further, they claim that such expectation was borne out when the Union identified only a single witness in its trial memorandum and presented no evidence on the first day of trial in pursuit of the argument, which was only temporarily successful, that Plaintiffs bore the burden of proof as to whether it had engaged in chargeable activities. (Pls.' Reply 16.) According to Plaintiffs, it was not until this Court rescheduled trial in January 2008, that the Union proffered supplemental self-executing disclosures, listing, *inter alia*, twenty-eight previously-unidentified witnesses and thirty or more previously-unidentified exhibits. (Pls.' Reply 16.) Under the circumstances, the Court concludes that evidence of Plaintiffs' rejection of the 2006 settlement offer has no bearing on Plaintiffs' success. See Lohman, 574 F.3d at 169 ("A court is...free to reject such evidence as not bearing on success when, for instance, negotiations occur at an early

stage before discovery, or are otherwise not a fair measure of what a party is truly seeking in damages."). The Court finds that Mr. Young's expenditure of 43.0 hours in connection with the settlement conferences in 2000 and 2006 is not excessive.

**b.** **Expertise of Counsel**

The Union also contends that Plaintiffs' counsel claims an excessive amount of time for the following three categories of services: (1) initial investigation, complaint, amended complaints, and service (55.4 hours); (2) summary judgment motion practice (220.6 hours); and (3) class certification materials (3.7 hours). Specifically, the Union argues that those hours are unreasonable given Mr. Young's admitted expertise in fair share litigation and his recycling of pleadings and motions filed in Hunter v. City of Philadelphia, No. 98-4598 (E.D. Pa. Aug. 27, 1998). (Def.'s Resp. 24-28.) The Court agrees.

Turning to the first category, the Court finds that adjustments must be made, in light of Mr. Young's skill and experience, as follows:

**(1) Initial Investigation, Complaint, Amended Complaints, and Service:**

| Task | Hours | Adjusted Hours |
|------|-------|----------------|
| Consult with referring attorney, travel to Philadelphia, meet with 20 prospective clients, return to office | 9.25 | 9.25 |
| Review relevant documents; client communications | 4.5 | 4.5 |
| Draft and polish Complaint; legal research "into relevant Pennsylvania law;" prepare client communication regarding Verified Complaint; consult with clerk regarding filing Complaint | 11.0 | 6.0* |
| File Complaint; prepare summonses; arrange service; telephone call from counsel for City Defendants regarding extension to answer | 3.75 | 3.75 |

19

| | | |
|---|---|---|
| Oppose Defendants' Motions to Dismiss; reply to Defendants' oppositions to preliminary injunction motion | 17.2 | 17.2 |
| Review/comply with local rules regarding motion practice in context of amended and/or supplemental complaint | 1.2 | 0.5* |
| File amended and/or supplemental complaint; communications related to Court's disposition of pending motions | 3.8 | 3.8 |
| "Importunings" of clerk's office to receive orders by facsimile | 0.2 | 0.0* |
| Prepare and file second amended and/or supplemental complaint | 4.5 | 4.5 |
| **Total** | **55.4** | **49.5** (-5.9) |

Drafting and polishing the Complaint should have taken approximately 5.0 hours, given Mr. Young's extensive experience in fair share litigation. See <u>Pretlow</u>, 2005 U.S. Dist. LEXIS 35547, at *16 (holding that Mr. Young was entitled to recover five hours for his work on the complaint given his experience and the similarities with the complaint filed in <u>Mitchell v. City of Philadelphia</u>, No. 99-6306 (E.D. Pa. Dec. 10, 1999)). Therefore, Plaintiffs are entitled to recover 6.0 hours (not 11.0 hours) for drafting the Complaint and performing related tasks (legal research, preparing a client communication, and consulting with the clerk).

In addition, the Court deems excessive Mr. Young's expenditure of one hour and 12 minutes to review and comply with local rules regarding motion practice in the context of amended and/or supplemental complaints. Such a task should have taken no more than a half an hour. Also, the Court cannot ascertain what tasks were performed by Mr. Young related to the "importunings of clerk's office to receive orders by facsimile." See, e.g., <u>Evans</u>, 273 F.3d at 361

("[A]ttorneys seeking fees must document the hours for which payment is sought 'with sufficient specificity to allow the District Court to determine whether the hours claimed are unreasonable for the work performed.'") (citation omitted). Therefore, no hours can be recovered for such "importunings." Accordingly, the Court will reduce the hours in the first category from 55.4 hours to 49.5 hours.

Turning to the second category, the Court finds that additional adjustments are necessary as follows:

**(2) Summary Judgment Motion Practice:**

| Task | Hours | Adjusted Hours |
|------|-------|----------------|
| Summary Judgment Motion | 104.6 | 55.6* |
| Renewed Summary Judgment | 71.3 | 71.3 |
| Responding to Union's Summary Judgment Motions | 44.7 | 14.5* |
| **Total** | **220.6** | **155.4** (-65.2) |

The Union contends that 220.6 billable hours for "summary judgment motion practice" is excessive given that Plaintiffs' Motion for Summary Judgment (Doc. 37) and Memorandum in support thereof (Doc. 42) are nearly identical to the summary judgment motion and accompanying memorandum filed in <u>Hunter v. City of Philadelphia</u>, No. 98-4598 (E.D. Pa. Aug. 27, 1998). (Def.'s Resp. 26.)

In response, Plaintiffs argue that those motions do not represent the entirety of motions prepared and filed that fall within this category. Plaintiffs assert that the 220.6 hours also reflect the time expended in preparing the stipulation of facts (Doc. 39), preparing the corrected memorandum briefing summary judgment (Doc. 42) and motion for leave to file it (Doc. 40),

preparing the consolidated opposition to District Council 33's cross-motion for summary judgment and reply to the Union's opposition to the motion (Doc. 45); traveling to and from, and attending oral arguments on summary judgment; and, preparing a renewed motion for summary judgment and supporting documents (Docs. 52, 55, & 57).  (Pls.' Reply 20-21.)

The Court deems excessive Mr. Young's expenditure of 104.6 hours on summary judgment and 44.7 hours in responding to the Union's summary judgment motions.  Of the 104.6 hours, it appears that Mr. Young dedicated approximately 60.0 to 70.0 hours toward drafting and preparing the summary judgment motion (not including the time spent drafting the stipulation of material facts).[9]  That expenditure of time is unreasonable.  For an attorney with Mr. Young's skill and experience, it should have taken no more than one-third of that amount of time to draft and prepare the summary judgment motion.  See, e.g., Pretlow, 2005 U.S. Dist. LEXIS 35547, at *16 (holding that Mr. Young was entitled to recover 20.0 hours for work spent preparing the summary judgment motion and appearing for oral argument).  Therefore, the Court will reduce the hours claimed for the summary judgment motion from 104.6 hours to 55.6 hours.

The Court also will make an adjustment to the hours expended by Mr. Young in responding to the Union's summary judgment motions.  The bulk of those hours (30.2 hours) were spent responding to the Union's summary judgment motion on chargeability and proportionality (Doc. 111).  Therefore, this Court will reduce the hours claimed for responding to the Union's summary judgment motions from 44.7 hours to 14.5 hours.

The Court will not, however, make any adjustments to the time expended in connection

---

[9] The balance of time was dedicated toward drafting the stipulation of material facts, travel, correspondence, and preparation for oral argument.

with the renewed summary judgment motion because those 71.6 hours include not only the time spent preparing the motion, but also the time spent replying to Defendants' opposition to the motion, and drafting an opposition to Defendants' renewed motion for summary judgment.  The Court does not deem such an expenditure of time excessive.

Turning to the third category of tasks, the Court finds that additional adjustments must be made as follows:

**(3) Class Certification:**

| Task | Hours | Adjusted Hours |
|------|-------|----------------|
| Motions for class certification | 3.7 | 2.0* |
| **Total** | **3.7** | **2.0** (-1.7) |

The Union contends that Plaintiffs' Motion for Class Certification and Memorandum in support thereof are substantially similar to the class certification materials filed in <u>Hunter v. City of Philadelphia</u>, No. 98-4598 (E.D. Pa. Aug. 27, 1998).  (Def.'s Resp. 27.)  Plaintiffs argue that it was reasonable to spend less than four hours updating legal research and preparing such an important motion.  (Pls.' Reply 21.)  The Court finds that the class certification motion and memorandum should have taken no more than 2.0 hours and, therefore, a downward adjustment from the claimed 3.7 hours is necessary.

### c.     Travel Time and Costs

The Union further contends that Mr. Young should not be fully compensated for his travel time and the costs incurred for travel.  (Def.'s Resp. 29.)  Generally, "under normal circumstances, a party that hires counsel from outside the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel."  <u>See, e.g.</u>, <u>Hahnemann</u>

Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 312 (3d Cir. 2008) (citation omitted).  However,

where forum counsel are unwilling to represent the plaintiff, travel costs incurred by such

counsel are compensable.  Id.  Here, all four declarations submitted in support of Plaintiffs'

Petition state: "It is my opinion that it would have been virtually impossible for Plaintiffs in this

case to find qualified local attorneys willing to handle this case."  (Hunsicker Decl. ¶ 6; Grimaldi

Decl. ¶ 6; Cibik Decl. ¶ 6; Firth Decl. ¶ 5.)  No basis was provided for such an opinion, and no

evidence presented to suggest that Plaintiffs attempted to find local counsel and were

unsuccessful.  Also, "Plaintiffs have not shown either that this case required special expertise

beyond the competence of in-state counsel or that any such attorneys with the requisite expertise

were unable or unwilling to take the case."  See Mangino v. Pa. Tpk. Comm'n, No. 07-00370,

2009 U.S. Dist. LEXIS 118953, at *18 (W.D. Pa. Dec. 22, 2009) (citations omitted); Pretlow,

2005 U.S. Dist. LEXIS 35547, at *28 (finding no entitlement to reimbursement for travel costs

"in the absence of any showing that Plaintiffs were unable to hire counsel within the forum").

Therefore, the Court agrees that Mr. Young's travel time and costs are not properly included in

the lodestar calculation.

Mr. Young's travel time prior to March 14, 2007 is approximately 71.6 hours.[10]  In

addition, Plaintiffs claim travel-related expenses totaling $19,599.16.[11]  (Young Decl. ¶ 8.)  Since

---

[10]  The Court arrived at that number by reviewing all time entries in the Summary Report related to travel and adding the hours listed in those entries.  Certain time entries consolidated the time spent on travel with time spent performing other tasks as follows: (1) 04/09/2006: 6.8 hours for "Drive to Philadelphia for settlement conference; prepare for settlement conference;" (2) 04/10/2006: 12.25 hours for "Breakfast w/client; attend settlement conference; return from settlement conference to Virginia;" and (3) 04/16/2006: 13.9 hours for "Travel from ATL-PHL for trial; witness prep w/Irv Ross; prep for trial."  For each of those entries, the Court allocated 4.5 hours for travel.

[11]  When the individual expenses itemized in the Young Declaration are combined, Mr. Young's travel-related expenses total $22,397.49.  However, the Court will use the lower figure, $19,599.16, as it appears throughout the Young Declaration and the Petition.

there is no showing, other than conclusory opinions submitted in the declarations, that Plaintiffs were unable to hire forum counsel, Plaintiffs' counsel is not entitled to a reimbursement of the expenses associated with his travel. Accordingly, the Court will reduce the hours which may serve as the basis for Plaintiffs' fee award by 71.6 hours, and will not award the sum of $19,599.16 in expenses incurred by Mr. Young in his travels.

### d. Attorneys' Fee Petition

Although the Union does not raise any specific objections to the time expended by Mr. Young in preparation of the attorney fee petition and reply, this Court finds that an additional adjustment must be made. Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 713 (3d Cir. 2005) ("While it is true that...the 'district court cannot decrease a fee award based on factors not raised at all by the adverse party,'...the court has 'a positive and affirmative function in the fee fixing process, not merely a passive role.'") (internal citations omitted).

**(4) Attorneys' Fees:**

| Tasks | Hours | Adjusted Hours |
|---|---|---|
| Petition for Attorneys' Fees | 28.75 | 15.0* |
| **Total** | **28.75** | **15.0** (-13.75) |

Generally, attorneys are entitled to recover fees for time spent drafting fee petitions. See, e.g., Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J., 297 F.3d 253, 268 (3d Cir. 2002). However, the Court finds Mr. Young's fee request for time spent on the fee petition to be unreasonable and excessive. As the court noted in Pretlow, "Mr. Young should be well-versed not only in the substantive law of agency fees but in the law pertaining to attorney's fees as well." 2005 U.S. Dist. LEXIS 35547, at *18. Therefore, the Court finds that the request of

payment for nearly 30.0 hours spent drafting the fee petition and reply is excessive. Mr. Young is entitled to fees for 15.0 hours spent drafting the petition and reply brief for attorneys' fees.

Accordingly, taking into account all the downward adjustments to the 545.35 hours ceiling (-5.9, -65.2, -1.7, -71.6, -13.75), the total number of hours reasonably expended by Mr. Young is 387.2.

### C.   **Reasonable Hourly Rates.**

In addition to determining compensable hours, the court must determine the proper rate to assign to those hours. The appropriate rate for any fee award is the prevailing market rate in the relevant community. <u>Blum v. Stenson</u>, 465 U.S. 886, 895 (1984). As the Supreme Court explained:

> [T]he burden is on the fee applicant to produce satisfactory evidence in addition to the attorney's own affidavits that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to for convenience as the prevailing market rate.

465 U.S. at 895 n.11; <u>see also</u> <u>Holmes</u>, 205 F.3d at 595.

The best evidence of a prevailing market rate is counsel's customary billing rate, <u>Blum</u>, 465 U.S. at 895 n. 11, however the court must apply the market value of the lawyer's services if the evidence shows that it is lower than the attorney's billing rate. Moore et al., <u>supra</u> at ¶ 54.190. Where the fee movant has no customary rate and will not be charging the movant any fee, the prevailing market rate can be established from several sources, including: "(1) affidavits of counsel with similar experience as to what they would charge for a similar case; (2) bar surveys of customary rates; (3) the amount charged by counsel for the opposition in the particular

case or similar litigation; (4) the amounts awarded counsel with similar experience in similar litigation; and (5) the amounts awarded for the services of counsel in prior litigation." Moore et al., supra at ¶ 54.190. Courts also must take into account counsel's experience and expertise. Id.

For the work performed by Mr. Young, Plaintiffs request fees at the rate of $400 to $450 per hour, and Plaintiffs have submitted declarations from local practitioners who claim such a rate is reasonable. (Pls.' Pet. 9.) In addition to those declarations, Plaintiffs rely on the 2008 National Law Journal Billing Survey ("NLJ Survey"), which shows that the requested rates are within the range of partner billing rates among six of Philadelphia's major law firms.[12]

The Union submits that this Court should rely on the fee schedule formulated by Community Legal Services ("CLS") as a fair reflection of Philadelphia market rates. (Def.'s Resp. 18.) At the time this suit was filed, Mr. Young had ten years of experience. According to the Union, for attorneys with 6-10 years of experience, the CLS provides an hourly rate range of $200-$230; for attorneys with 11-15 years of experience, $240-$300; for attorneys with 16-20 years of experience (as Mr. Young has now), $275-$315. (Def.'s Resp. 18.) Thus, the Union argues that the maximum hourly rate to which Mr. Young is entitled is $230 (for the first year of this case); between $240 and $300 (for years 2 through 6); and, $315 for the years corresponding to when the trial was conducted beginning in 2006. (Def.'s Resp. 19.)

Plaintiffs argue that the hourly rates sought reflect current prevailing rates in the

---

[12] According to Plaintiffs, the NLJ Survey reports that Blank Rome has a "Partner Billing Rate Low" of $425, and a "Partner Billing Rate High" of $785, with an average hourly rate of $525. (Pls.' Pet. 12.) Cozen O'Connor reports a range of $240 to $640, with an average of $457. (Pls.' Pet. 12.) Duane Morris reports a range of $340 to $755, with an average of $490. (Pls.' Pet. 12.) Fox Rothschild reports a range of $250 to $590, with an average of $443. (Pls.' Pet. 12.) Montgomery, McCracken, Walker & Rhoads reports a range of $360 to $585, with an average of $440. (Pls.' Pet. 12.) Finally, Pepper Hamilton reports a range from $385 to $795, with no average reported. (Pls.' Pet. 12.)

Philadelphia market. (Pls.' Reply 9.) Moreover, they argue that the Union has failed to adduce sufficient evidence (by affidavit or brief) challenging the reasonableness of the fee. (Pls.' Reply 10.) Specifically, Plaintiffs reject the Union's reliance upon: (1) the CLS schedule, effective April 1, 2006, which has not been subsequently amended, and which is based solely upon years of practice and no other factors; (2) unspecified press reports "regarding the depressed economic condition of the legal community in the Philadelphia area;" and (3) a declaration from a local practitioner who has spent his career representing labor unions. (Pls.' Reply 10.) Plaintiffs also argue that "civil rights practice is not a legal ghetto justifying lesser hourly rates than those commanded by competent and experienced litigators…." (Pls.' Reply 10-11.) Plaintiffs urge that their counsel has "specialized skills and experience" in agency law and is listed as counsel on more than 55 reported federal decisions in 20 years of practice. (Pls.' Reply 11.) Moreover, Plaintiffs' lead counsel holds an "AV" rating from the Martindale-Hubbell ratings system, indicating "very high to pre-eminent legal ability and very high ethical standards as established by confidential opinions from members of the Bar." (Pls.' Reply 12.) Finally, Plaintiffs point to the declarations of not fewer than four local practitioners, attesting to the reasonableness of the fees. (Pls.' Reply 12.)

Based on the Court's familiarity with the market rate for employment, labor, and civil rights litigation in the Eastern District of Pennsylvania as well as the declarations submitted in support of and in opposition to Plaintiffs' fee petition, the Court finds that a rate of $400 per hour for Mr. Young's services is reasonable in light of his education, experience, and reputation. See Mangino, 2009 U.S. Dist. LEXIS 118953, at *28; Lining v. Temp. Pers. Servs., No. 07-1724, 2008 U.S. Dist. LEXIS 60930 (W.D. Pa. July 31, 2008) (awarding fees at the rate of $400 for an

attorney practicing employment law); <u>Risk v. Burgettstown Borough</u>, No. 05-1068, 2008 U.S.

Dist. LEXIS 67201 (W.D. Pa. July 3, 2008) (also awarding fees at the rate of $400).  Although

"the Third Circuit has accepted the CLS fee schedule in some circumstances, such as where the

attorney seeking recoupment of fees was associated with CLS, or where limited evidence was

submitted by the parties," the Court declines to apply the CLS fee schedule here.  <u>See</u> <u>Mary</u>

<u>Courtney T. v. Sch. Dist.</u>, No. 06-2278, 2009 U.S. Dist. LEXIS 5180, at *10 (E.D. Pa. Jan. 22,

2009) (internal citations omitted); <u>Davis v. Riddle & Assocs., P.C.</u>, 579 F. Supp. 2d 692, 694

(E.D. Pa. 2008) ("The CLS schedule, while a useful starting point, is not the exclusive tool to

determine appropriate fees in the presence of other evidence.").

 First, the CLS fee schedule provides rates that are valid as of April 1, 2006, therefore, it

does not reflect current rates.  When awarding attorneys' fees, courts must use the current market

rate, or the rate at the time of the fee petition, not the rate at the time the services were

performed.  <u>See, e.g.</u>, <u>Lanni v. New Jersey</u>, 259 F.3d 146, 149 (3d Cir. 2001) (rejecting the use of

a historical graduated scale to calculate current market rates).  Second, this case "does not

involve CLS-affiliated attorneys, nor is it a case where the parties failed to submit sufficient

evidence of prevailing market rates."  <u>Mary Courtney T.</u>, 2009 U.S. Dist. LEXIS 5180, at *10.

Third, "the CLS schedule does not take into account any specialized skills or experience the

attorneys bring to their practice," <u>id.</u>, contrary to the governing precedent which instructs courts

to determine an appropriate fee award based on an attorney's particular "skill, experience, and

reputation."  <u>See</u> <u>Loughner v. Univ. of Pittsburgh</u>, 260 F.3d 173, 180 (3d Cir. 2001) (quoting

<u>Rode v. Dellarciprete</u>, 892 F.2d 1177, 1183 (3d Cir. 1990)).  Therefore, given Mr. Young's

specialized skills and experience in the field of agency fee law and the declarations of four local

practitioners attesting to the reasonableness of the rates sought, the Court will award fees to Mr. Young based on an hourly rate of $400.

Accordingly, when the number of hours reasonably expended (387.2) is multiplied by the hourly rate ($400), the Court arrives at a total fee award of $154,880.

### D. Reasonable Costs.

In addition to attorneys' fees, Plaintiffs seek reasonable costs in the amount of $13,017.25 (not including travel expenses, discussed above). (Pls.' Pet. 9.) That total appears to be based on the following expenses: filing fee of $150; service of process and witness and mileage fees of $305[13]; deposition transcript costs of $3,334.03 (on 1/19/06, 3/20/08, 3/25/08, 3/27/08, 3/28/08, and 4/20/08[14]); and trial transcript costs of $8,844.12[15] (on 12/2/04, 4/18/06, 4/28/08, 6/9/08, 7/16/08, 7/30/08, and 9/15/08, minus a refund of $484). (Young Decl. ¶ 8; Pls.' Pet. 9.) However, those individual expenses actually total $12,603.15, so it is unclear how Plaintiffs arrive at the amount of $13,017.25. (Pls.' Pet. 9.) Regardless of Plaintiffs' methodology for arriving at the total, the Court can determine the appropriate amount of costs to award Plaintiffs by adding the individual expenses claimed and excluding those costs incurred after March 13, 2007 in connection with the trial on chargeability. Therefore, the Court will award costs as follows:

---

[13] The figure provided by Plaintiffs ($305) seems to reflect only service of process charges (not witness and mileage fees).

[14] There is no entry for 04/20/08; it appears that Plaintiffs intended to refer to the cost entry for 04/02/08. The costs incurred on 04/02/08 ($249) are reflected in the total amount of $3,334.03. Also, it appears that Plaintiffs omitted the entry for 04/09/08, "deposition transcripts and supplies for trial," totaling $1,146.84. Those costs also are reflected in the total amount.

[15] Plaintiffs' Petition states that the trial transcript costs total $8,814.12, while the Young Declaration lists $8,844.12 as the total. When the individual expenses are added, it appears that the higher figure is correct.

| Date | Description | Cost |
|------|-------------|------|
| 10/22/99 | Filing Fee | $150 |
| 12/15/99 | Service of Process | $230 |
| 05/10/01 | Service of Process | $75 |
| 01/19/06 | Deposition Transcript | $425.50 |
| 12/02/04 | Trial Transcript | $174.90 |
| 04/18/06 | Trial Transcript | $880 |
| **Total** | | **$1,935.40** |

All other costs were incurred after March 13, 2007. Accordingly, the Court will award Plaintiffs costs in the amount of $1,935.40.

### E. Liability Apportioned Between Joint Defendants.

During oral argument, the Union argued that any fees awarded to Plaintiffs are the sole responsibility of the Union. This Court disagrees. Courts typically apportion attorneys' fees and costs among civil defendants. See, e.g., Sheffer v. Experian Info. Solutions, Inc., 290 F. Supp. 2d 538, 544-45 (E.D. Pa. 2003). Therefore, the City and the Union are jointly and severally liable for attorneys' fees in the amount of $154,880 and costs in the amount of $1,935.40.

### CONCLUSION

For the foregoing reasons, this Court will grant in part and deny in part Plaintiffs' Petition. An appropriate Order follows.